IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 1:18-cr-0006 |
| *Plaintiff,* | ) Judge Donald C. Nugent |
| v. | ) |
| AESHA JOHNSON, | ) **DEFENDANT'S SENTENCING MEMORANDUM** |
| *Defendant.* | ) |

Now comes the Defendant, Aesha Johnson, by and through counsel, responding to the assertions made by the Government in its Sentencing Memorandum, filed on June 10, 2019, incorporates her arguments and written objections to the PSR previously outlined and opposes the arguments of the government in seeking sentences for the conduct for which Ms. Johnson was found guilty.

Following a jury trial Ms. Johnson was found guilty of conspiracy (18 U.S.C. 1349) to commit wire fraud with counts for each of the fourteen incidents of wire fraud making up the conspiracy (18 U.S.C. 1343) and 14 counts of Aggravated Identify Theft (Aiding and Abetting) of in violation (18 U.S.C. 1028).

Evidence was introduced at trial to demonstrate a pattern of false tax returns alleging refunds due over a two year period from January 2013 until April 2014.  As in all financial crime cases, the applicable sentencing guidelines are based upon the financial loss incurred by victims and proven at trial.  In this case, as the scheme involved filing tax returns for individuals who

1

were primarily unemployed and not entitled to tax refunds, the real victim in terms of loss would be the Internal Revenue Service. The matter proceeded to trial and Ms. Johnson now faces sentencing by this court.

I.     **FACTUAL BACKGROUND**

Following trial, Dr. Sandra McPherson, forensic psychologist[1], examined Ms. Johnson to evaluate her overall mental health. Her report (and the clinical analysis detailed) have been made available to the court. Dr. McPherson opines that Ms. Johnson suffers from serious mental health issues which affect her decision making. Her fractured family history is significant in determining her perceived need to provide financial support for her children. She has shared her feelings of remorse over her past decision making and longstanding sadness over the disappointment she has caused her Mother, in particular. Her lack of self-esteem and her belief that she has failed to live up to the expectations of her family and friends, as well as her own, underscore her efforts to succeed in business, albeit through illegal means. The motivation behind her conduct must be considered in determining the impact a prison sentence will have because rehabilitation is the key to ensuring her successful return as a productive member of society. To balance the need to punish the Defendant's conduct with the desire to rehabilitate her and prevent further recidivism should remain this court's goal.

Ms. Johnson acknowledges that her past conduct has included prior criminal acts but she has also been sanctioned for her crimes, including prior prison sentences. She also recognizes the price that these choices have had on her family. Her son, Brandon, is in college at the University of Cincinnati and wishes to pursue a future career in the law. She knows she will not be there to

---

[1]     See Doc. #114-1, Dr. McPherson's CV.

support him or to encourage him as he transitions into adulthood. She is hoping that she can complete vocational and rehabilitation programs while serving any sentence so that upon her return she can be the parent that she has failed to be in the past. Although educated and gifted in many ways, she has never put these talents to good use and hopes that she can return to society in the future and pursue a different path. The government asks this court to focus attention on her past crimes as the primary indicator for future likelihood of recidivism; however, with mental health services and related treatment programs, she can change and is motivated to show her progress. The purpose of the combining offense conduct and criminal history through the United States Sentencing Guidelines is to take into account recidivism as well as past punishment.

The government has done its best to present evidence of a serious impact by the tax refund scheme on victims and has outlined the personal struggles stated in their impact affidavits. As is often the case in financial crimes, poverty, substance abuse and other societal handicaps haunt the victims in this case. However, these same factors asserted by the government as substantial hardship, should also be seen in terms of the motivation to participate. Counsel is not trying to blame victims for the actions of Ms. Johnson and her daughter. But the loss of tax refund money to individuals without employment or earnings which would require – or support – filing income tax returns are not vital government benefits that have been lost. In reality, few of the victims who testified at trial or provided theft affidavits to the government had actual claims for the refunds asserted.[2] Economic situation or the claimed status for purposes of obtaining cable or disability benefits was not shown to have been affected by the tax scheme as alleged. The-

---

[2] In its Memorandum, the government repeats statements made by victims about the false tax returns but does not recount any significant loss of benefits by any one victim. No victim suffered any loss akin to the type sustained by victims in the cases cited by the government.

3

se crimes are non-violent and do often accompany some participation on the part of victims, as a quid pro quo for their information. Ms. Johnson has learned now that this past conduct will cost her greatly in terms of time with her family and the disappointment that she has with her personal choices and selfishness as demonstrated.

Significant financial hardship as used in the Guidelines is primarily reserved for the loss of retirement, life savings or other earned benefits that the victims have spent their lifetime obtaining. These types of cases, as discussed later in this memorandum are not similar to the facts of this case. Although the court, of course, considers the indignation expressed by the victims as to the theft of their identity or use of personal information, there has been no demonstration of the consequential significant financial hardship under the Sentencing Guidelines. Significant financial hardship as identified in the notes and comments in 3B1 of the Sentencing Guidelines with the loss of a home or business; personal bankruptcy or insolvency or a proven effect on credit. Nothing like these consequences was proved at trial and they should not now be the basis for consecutive sentences or upward variances urged by the government. Ms. Johnson seeks only a sentence based on the facts proven at trial and on her criminal history – without the enhancement or soapbox arguments. She seeks a sentence within her guideline range of a Level 13, criminal history category V as argued herein based upon the conduct that was supported the guilty verdict at trial. The court must be careful in this case not to accept the arguments of the government in its zealous pursuit for punishment as the offense conduct of Ms. Johnson cannot be also then be used as enhancements to the calculations of her guideline range. Such "double counting" occurs "where a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement. *United States v. Eversole*, 487 F.3d1024 (6th Cir. 2007). The

overarching principle must be fairness without undue punishment.

## II. LAW AND ARGUMENT

Ms. Johnson has articulated the legal support and opposition to the government's position in her written objections. These arguments are reiterated herein as the government has articulated its own analysis for the court's review.

### A. The calculation of loss for purposes of determining the offense level must be the actual loss sustained.

The US Probation Department has accepted the representations of the government – calculating the loss in this case at $282,922. This calculation is not a proper use of the guidelines and that the offense level under USSG 2B1.1(a)(1) should be limited to actual loss sustained rather than increased by the proffered plea agreement of the co-defendant or inclusion of tax returns outside the indicted period. The base offense level for the wire fraud charges of 7 should be appropriately increased by the amount of actual loss incurred and as factually determined by the jury. The 14 false tax returns which are the overt acts of the wire fraud and identity theft charges totaled an actual loss of $63,708.[3] Any other amounts claimed for purposes of the offense level cannot be determined by a preponderance of the evidence review by this court but must be limited to the jury findings. The calculation of pecuniary harm that was intended to result from an offense and imposed pursuant to United States Sentencing Guidelines Manual 2B.1.1 must comply with the mandates of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738(2005) which held that the Sixth Amendment right to a trial by jury required judges to use only the facts proved to a jury to increase the sentence beyond the standard range. Therefore, the

---

[3] No jury interrogatories were presented to the jury so there has been no actual loss considered or found by the jury for purposes of calculating the offense level as contemplated in USSG 2B1.1(a)(1), except the $63, 708 loss stated in the fourteen counts.

5

maximum sentence that a judge may impose is based upon the facts admitted by the defendant or proved to a jury beyond a reasonable doubt. See also *Blakely v. Washington,* 542 U.S. 296, citing which held that "As it was when the Fifth and Sixth Amendments were adopted, a judge's sentencing authority derives from, and is limited by, the jury's factual findings of criminal conduct. A jury must find beyond a reasonable doubt every fact "'which the law makes essential to [a] punishment'" that might be imposed, citing, *Apprendi* v. *New Jersey,* 530 U. S. 466.

In this case, the government seeks to use the proffer of co-defendant Brittany Williams who accepted responsibility for a total loss of $282,922 as the appropriate loss to be attributed to Ms. Johnson. The PSR accepts this argument and amount to calculate the offense level and increases the base level of 7 by 12 additional levels. This calculation is error in accordance with *Apprendi, Booker* and their progeny. In *United States v. Sedore*, 175 Fed.Appx. 714 (6th Cir.2006), which also involved a scheme of filing false tax returns for victims who did not otherwise qualify for refunds, the Court enhanced the base offense level on facts found by a preponderance of the evidence contrary to *United States v. Booker*. The 6th Circuit reversed the sentence and remanded. This court's acceptance of any amount other than actual loss will result in the same over-calculation. The failure to allow the jury to determine enhanced penalties based upon pecuniary loss not proven at trial was discussed in *United States v. Newson*, 51 Fed. Appx. 986 (6th Cir. 2009), in which the sentencing court did not have factual record to support a calculation of $40,000 as intended loss rather than the $9,000 actual loss proven at trial. *Newson* involved a defendant using a false identity to facilitate the purchase of 2 automobiles but the actual loss accepted by the jury was not used by the trial judge for purposes of sentencing. The 6th Circuit reversed.

> In determining loss under U.S.S.G. § 2B1.1, the court must use the greater of actual or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A). The Guidelines define "actual loss" as "reasonably foreseeable pecuniary harm," which connotes the monetary harm "the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* at cmt. n.3 (A)(i), (iii), (iv). "Intended loss" is "the pecuniary harm that was intended to result from the offense," including "pecuniary harm that would have been impossible or unlikely to occur." *Id.* at cmt. n.3(A)(ii).

*United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013).

In the context of a loan-related fraud "intended loss" is the amount that the defendant subjectively intended not to repay." *United States v. Moored*, 38 F.3d 1419 (6th Cir.1994). Ms. Johnson urges the court to accept the actual loss received from the false tax returns that were processed not other amounts from returns not filed or rejected. She also objects to any loss that might be construed from other filings outside the indictment period, either past or future. In this case, the government is attempting to include amounts from tax returns prepared but not filed or filed but rejected, all of which did not result in any refund. The calculation of actual loss should therefore be the amounts actually paid out by the government or received by the defendants as a result of the fraudulent scheme as it would be impossible for any true victim to receive any other amount than the calculation of the refunds reflected on the returns.

There is only one victim in this case: namely the Internal Revenue Service. The individuals whose names and information were used to file the tax returns were largely not entitled to any refund because of unemployment, incarceration or other impediment. The victims who testified or signed fraud affidavits had no realistic expectation of a tax refund absent some type of fraudulent scheme.[4] Any sentencing enhancement under U.S.S.G. § 2B1.1(b)(2)(A), which allows for

---

[4] This argument was not made at trial.

a two level enhancement when 10 or more victims are involved, would thus also be incorrect as the IRS is the singular victim. For purposes of § 2B1.1, "victim" is defined as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense." U.S.S.G. §2B1.1 cmt n.1. But there is only one victim in a tax scheme, the IRS. (In the second appeal of *United States v. Sedore,* 512 F.4d 819(6th Cir. 2008), the defendant attempted to raise this argument but it was not properly preserved or argued at trial or the sentencing hearing. Accordingly, the appellate court did not consider the argument and stopped short of commenting on its merit.)

Ms. Johnson thus seeks a six level increase to the base offense level of 7 based upon the actual loss of $63,708. The appropriate offense level in this case is 13 based upon considerations of actual loss and the numbers of victims as contemplated in U.S.S.G. 2B1.1.

B. **A finding of substantial financial hardship is not supported and not warranted**.

In its request for a finding that an enhancement for substantial financial hardship is appropriate, the government relies on *United States v. Castaneda-Pozo*, 877 F.3d 1249, (11th Cir. 2017) which involved defendant's participation in a scheme that included inter alia, theft of money orders from rental drop boxes at apartment complexes. The evidence at trial included testimony from victims who had to borrow money from family and friends in order to avoid eviction and remain in their homes. Although none of the victims were actually evicted, the scheme threatened "basic life necessities" such as housing and the theft resulted in substantial risk of harm or hardship to the victims. In its discussion about what conduct might constitute this type of financial hardship, the court reviewed recent cases from other circuits on the issue including *US v. Minhaus*, 850 F3rd. 873 (7th Cir. 2017) where victims of a travel agency's fraud each suf-

fered more than $2,000 in losses that would take years to recover. The *Minhaus* court emphasized that the inquiry is specific to each victim, as "[t]he same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup." *Id.* at 877. Using the *Minhaus* rationale, victims who sustained the loss of a perceived tax benefit only without earning such right through employment cannot be viewed as a significant hardship.

In *United States v. Brandriet*, 840 F.3rd 558 (8th Cir. 2016) the 8th Circuit held that a district court did not clearly err when it found that a victim who lost savings, postponed her retirement, and was forced to move suffered substantial financial hardship. *Id*. at 561. The Sixth Circuit recently considered this issue in *US v. Howder,* 748 Fed. Appx. 637 (6th Cir. 2018) which was a case involving fraudulent mortgage re-financing schemes following the mortgage crisis of 2008. The court upheld the enhancement for substantial financial harm stating that:

> Given the likely financial circumstances of each of these "at risk homeowners," given further that each of these 161 victims share the characteristic of having sought out MHAUSA's services in order to refinance their mortgage payments, and, finally, given that Howder was hitting them at precisely the point he knew they were most vulnerable—their mortgage payments, we hold that the district court did not clearly err by finding it more probable than not that at least twenty-five of Howder's victims suffered substantial financial harm.

*Id*. at 642.

Under the scheme in the present case, the victims did not have any realistic expectation of tax refund and also "loss" if it were a loss to the stated victims, is not commensurate with "in fact" injuries in the cited cases.

Ms. Johnson has formally objected to any adjustment for substantial hardship as outlined in ¶28 of the PSR and subsection B of the government's sentencing memorandum. The probation report cites to the three victim impact statements attached to the PSR as evidence of "substantial

9

hardship". The hardship in each is (1) impact on services like cable, (2) concern over impact for their credit rating and (3) possible impact on social security benefits. Likewise the number of victims involved is a claimed basis for enhancement of the overall sentence.  The hardship requirement as well as consideration for multiple victims are set out in USSG 2(b)1.1(b)(2)(B).

The 5 individuals who prepared the unsigned "victim statements" attached to the PSR and those who signed identity theft affidavits presented at trial have not suffered significant economic hardship. The hardships alleged are inability to get cable TV, concerns that credit is affected, the "emotional response" to someone using their name or personal information.  Approximately 12 victims signed fraud affidavits stating that they did not give permission for the use of their Social Security Numbers without indication of any loss suffered or sustained. Although these affidavits can be used generally to determine fraudulent conduct, this is not evidence that supports the finding of financial hardship. None of the concerns expressed rise to the level of substantial harm required for an upward adjustment to the offense calculations.

Sentencing Guidelines insight into the types of losses that may be construed as substantial financial hardship include primarily insolvency or bankruptcy, cessation of business activities, and proven direct effects on credit. See Application Note to USSG 2(b)1.1(b)(2)(B). While the list is not exhaustive, the general complaints identified in the Victim Impact Statements are not in the same strata.  Giving due consideration to the emotional responses of the victims and the negative impact that use of personal information might have, there is no evidence here of any substantial general effect and no evidence of significant loss of financial loss or loss of expected benefits incurred in this case.

C.     **Tax Preparation does not involve a position of public or private trust**.

Ms. Johnson did not hold any position of trust with the victims or special skills as a tax preparer to support the two level enhancement to her base offense level pursuant to U.S.S.G. § 3B1.3, which provides in pertinent part, "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

During the time periods stated, Ms. Johnson was incarcerated and did not communicate directly with any victim nor make any representation to obtain their trust or otherwise. As outlined, the alleged scheme involved the false use of personal information in tax filings not the abuse of a promise or a representation made to any of the victims personally. Preparing tax returns does not qualify as a position of public or private trust. See Application Note to USSG 3B1.3 which provides guidance on this issue. The examples provided include an attorney who embezzles funds from a client; a bank executive who fraudulently creates a loan scheme; or a doctor who sexually abuses a patient. The preparation of tax returns is not akin to these examples or even to the services of a licensed tax preparer.

There is also guidance to this court from the 6th Circuit as to conduct which supports this enhancement. In *United States v Guidry*, 199 F.3rd 1150 (10th Cir. 1999), the trial court was faced with an employee of a pension fund who embezzled and filed false tax returns to conceal her crimes. In its consideration of whether the enhancement for a position of trust was proper the court found that "the primary concern of 3B1.3 is to penalize defendants 'who take advantage of a position that provides them freedom to commit or conceal a difficult to detect.' wrong. *United States v. Koehn*, 74 F.3d 199 (10th Cir. 1996). We have applied 3B1.3 in two types of cases: 'the

first where the defendant steals from his employer ,using his position in the company to facilitate the offense, and the second where a fiduciary or personal trust relationship exists with the other entities (not the employer) and the defendant takes advantage of the relationship to perpetrate or conceal the offense. Id. (quoting *Brunson*, 54 F.3d at 677). <u>Mrs. Guidry's conduct in filing false income tax returns falls into neither category</u>." *Guidry* at 1160. [Emphasis added.] This decision was discussed at length in *United States v. Sedore, supra,* which involved a fraud scheme of filing false tax returns as overt acts of the wire fraud in which family relationships were falsely use and abused, including the use of names and social security numbers of children, in order to perpetrate the fraud. The court found an abuse of trust however, the analogy does not support the application of the enhancement in this case. Although some of the victims have some family relationship, there was no evidence that it played any role in the commission of the offense or resulting from any private position of trust. In determining whether the enhancement would be appropriate the issue is whether the relationship was the key factor in perpetrating the offense. "In order for the abuse of a position of trust enhancement to be applied to a defendant, the evidence must show that the defendant's position with the victim of the offense significantly facilitated the commission of the offense." *United States v. Moored*, 997 F.2d 139 (6th Cir. 1993). Moored used his position as a trustee of a small college to bolster his credibility and obtain loans and financing as part of an overall financial scheme. The bank was the actual victim. The position with the college was not sufficient to support the enhancement as it was not different than other crimes in which false representations are made.

      D.      **There is no evidence to support any obstruction of justice enhancement.**

The government seeks an enhancement for obstruction of justice alleging that Ms. John-

son willfully acted in a manner to prevent her daughter from making truthful statements to law enforcement. This conduct was the basis of the indictment charging witness tampering (Count 30). Ms. Johnson has objected to this enhancement because the facts do not support a finding of obstruction. At trial, Ms. Johnson was acquitted of this charge in accord with Federal Rule 29 This adjustment appears to be based upon conclusions drawn by the prosecutors. In its sentencing memorandum, the government outlines 5 "lies" purportedly provided by co-defendant Brittany Williams in a proffer related to the role of Ms. Johnson. The government implies that these alleged lies were false testimony provided to the court. Ms. Williams was not called and provided no testimony whatsoever to the court. The government is bootstrapping the testimony of law enforcement witnesses as to their investigation and events. That testimony, assuming that it was true is not sufficient to support an obstruction of justice enhancement.

Courts have found false testimony of the defendant at trial sufficient to support a finding of perjury or an obstruction of justice enhancement. In *United States v. Roberts*, No. 17-6512, __ F3d. __ (6th Cir. decided March 28, 2019) the court reversed an obstruction of justice enhancement despite the trial court's decision that "the defendant testified falsely "without making any other factual findings. Roberts challenged the enhancement and argued that the jury's guilty verdict was not sufficient to support a finding that his testimony was false and thus tantamount to obstruction of justice. The court reviewed this argument under the guidance of *United States v. Dunnigan*, 507 U.S. 87, 95 (1993) which requires a sentencing judge to "address each element of the alleged perjury in a separate and clear finding" rather than rely on arguments of the government. *Id.*

The government relies on the testimony of Agent Kushan and his opinions as to the demeanor of Brittany Williams at her proffers, without consideration of the role of counsel in mapping out an overall strategy at that time. Mr. Kushan noted anxiousness (opposed to open admissions) in order to support the purported role of Ms. Johnson in any untruthful statement. See also, *United States v. Warner*, 646 F. App'x 478, 480–81 (6th Cir. 2016) which holds that obstruction of justice requires evidence that a (witness) (1) made a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony." In short, the obstruction-of-justice enhancement applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." U.S.S.G. § 3C1.1 (2014).  See *United States v. Moss,* 9 F.3d 543, 554 (6th Cir. 1993) (individual testified "to the alleged solicitation of him by [the defendant] to bribe a witness"). There is no evidence that Ms. Johnson sought to suppress witness testimony.

 The context of communications between Mother and daughter, the mindset of the co-defendant at the time of her proffers and the timeliness of her own acknowledgement of guilt is not apparent and her truthfulness or untruthfulness cannot be attributed to Ms. Johnson to support obstruction.

The government asserts in its memorandum that a court may consider underlying conduct even where there has been an acquittal, citing to *United States v. Watts*, 519 U.S. 148 (1997). However, the government should be bound by one guiding principal that "without specific jury

14

findings, no one can logically or realistically draw any factual finding inferences" as held in *Watts*, supra.

### E. An adjustment for Leader or Organizer is not appropriate.

Ms. Johnson has also objected to an adjustment for role in the offense as a manager or leader. Based upon the Government's case, Ms. Johnson was aiding and abetting her daughter, Brittany Williams in the conduct alleged. The evidence demonstrated that Ms. Johnson was incarcerated during the periods at issue. The emails and chain of communication with her daughter may show knowledge and participation but not the required leadership role.

A familial relationship cannot remove the obvious ability of Ms. Williams to say no, assuming that the evidence clearly supported the leadership role. Ms. Johnson was not in any position to control the situation, nor withhold any desired monies or attention from her daughter since she was confined and left to merely rely on others. Enticement and encouragement are terms that are used to define Aiding and Abetting which is the allegation contained in the indictment. Ms. Johnson was not the principal actor in preparing or filing any tax returns and this conduct required volitional acts of Ms. Williams. See, the Application Note and Commentary to the USSG 3B1.1.

The majority of cases dealing with the appropriate role in the offense conduct deal with defendants who are alleged to be an organizer or leader of criminal activity that involved five or more participants under USSG 3B1.1(a). Although this case involves only 2 participants, the rationale provides guidance in determining whether the enhancement should be applied. The factual decision "should be based upon the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right

to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others". *U.S. v. Owusu* 199 F.3d 329 (6th Cir. 2000) (leadership role in a drug trafficking conspiracy where defendant supplied all of the drugs and received largest share of proceeds). See also, *United States v. Bingham*, 81 F.3d 617 (6th Cir. 1996) where defendant was the sole supplier of drugs for the overall conspiracy. These 2 drug conspiracy cases key on significant facts such as the central role in coordinating the drug pool, the collection of the buyer's funds, negotiation of the purchase price with the supplier and the wiring of payments in order to support a leadership role. Applying these factors to the present case, the government's argument for the enhancement is misplaced.

### III. THERE SHOULD BE NO UPWARD DEPARTURE BY THE COURT.

The government argues that Ms. Johnson's prior convictions and past conduct warrant an upward departure of her criminal history category to a **Category VI**. The government argues that Ms. Johnson's criminal history substantially underrepresents the seriousness of her past crimes and likelihood for recidivism. Defendant acknowledges that she has prior convictions but opposes any upward departure. The Sentencing Guidelines and the Criminal History calculation are designed to achieve one purpose, a fair sentence taking into account all known evidence and background factors. "The sentence and its explanation must comply with the "overarching provision instructing district courts to 'impose a sentence . not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States*, --- U.S. ----, 128 S.Ct. 558, 570, 169 L.Ed.2d 481 (2007) (quoting 18 U.S.C. § 3553(a)) [Emphasis added.]. Therefore, any upward departure must be based upon both procedural and substantive reasonableness.

In *United States v. Sedore,* Judge Merritt wrote a compelling dissent, obviously not compelling enough, speaking to the dangers of the application of aggravating factors by the court rather than "confine judicial fact finding to those facts carrying out a jury verdict or plea of guilty." *Id*. As the Court said in Cunningham, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge." *Cunningham v. California*, --- U.S. ----, 127 S.Ct. 856, 863-64, 166 L.Ed.2d 856 (2007) (emphasis added). *Sedore*, *Id.* In his dissent, Judge Merritt gives an example eerily similar to the arguments that the government is making in this case. Judge Merritt writes that "By ratcheting up the sentence, as is typical under the guidelines, piling aggravator on aggravator, the District Court (as though Booker had never been decided), went from a base offense level of 6 with criminal history Category VI (corresponding to defendant's guilty plea)-carrying a penalty of 12-18 months-to offense level 22. It then sentenced him to 7 years-5 times more than the base offense level corresponding to the facts of the guilty plea." *Id*. Vigilance is required for determining the sentence in this case based upon the evidence presented at trial versus the colorful arguments of the government for consecutive sentences, more than 5 times the sentence recommended for a guidelines calculation of the offense conduct. Factors such as individual deterrence, family background, mental illness or health of the defendant must be given serious consideration and weighed against the need for punishment. Based upon these principles, no upward departure to Ms. Johnson's criminal history calculation nor a sentence outside the guideline range should be chosen.

IV.  **CONCLUSION**

Ms. Johnson respectfully asks this court to sentence her within the guidelines range of an offense level 13, criminal history category V. Although the government urges the court to issue

48 month consecutive sentences for the counts of Aggravated Identify Theft, it is apparent that these counts are part and parcel to the overt acts of the wire fraud. There is no independent evidence that personal information was published or displayed to anyone outside of the conspiracy to make the victims vulnerable to future harm or loss. Thus, the need for consecutive sentences as an inducement or need for punishment is also not present.

    Wherefore, Ms. Johnson asks the court to carefully consider a sentence taking into account the nature of financial crimes, the lack of significant loss to any person, and the likelihood that Ms. Johnson will benefit from psychiatric treatment programs while incarcerated. As Dr. McPherson opined, Ms. Johnson would benefit greatly from mental health counseling to address her feelings of inadequacy. With appropriate treatment and participation in BOP programs, she can return to her family and community with the ability to use her talents and skills for the greater good.

    Respectfully submitted,

    _____/s/ Nancy C. Schuster_____
NANCY C. SCHUSTER #0020690 LEAD
Schuster & Simmons Co. LPA
2913 Clinton Avenue
Cleveland, Ohio 44113
(216) 348-1100 (Telephone)
(216) 348-0013 (Facsimile)
ss@apk.net (e-mail)

CAROLYN KAYE RANKE #0043735
55 Public Square #2100
Cleveland, Ohio 44113
(216) 374-7660 (Telephone)
kaye.ranke@gmail.com (e-mail)

*Counsel for Defendant Aesha Johnson*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2019, the foregoing has been electronically filed. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's system.

                                              */s/ Nancy C. Schuster*
                                       NANCY C. SCHUSTER #0020690 LEAD

                                       *Counsel for Defendant Aesha Johnson*